UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
                                          )
Sheryl Cohen,                             )
                Plaintiff,                )
                                          )
          v.                              )
                                          )   No. 18-380 WES
FGX International Inc., Anthony           )
Di Paola, individually and as CEO         )
and President; John Flynn Jr.,            )
individually and as former President;     )
and Jeffrey J. Giguere, individually      )
and as General Counsel and Secretary,     )
                                          )
                Defendants/Respondents.   )
                                          )
```

## MEMORANDUM OF DECISION

WILLIAM E. SMITH, Chief Judge.

On March 20, 2019, the parties appeared before the Court for a hearing on the Defendants'[1] Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 6 ("Defs.' Mot."). The Court subsequently entered an order that granted Defendants' motion. See 3/28/2019 Text Order. This memorandum explains why.

I.  Background

The Amended Complaint presents a farrago of factual allegations, conclusory assertions, and subjective characterizations

---

[1] Plaintiff amended her complaint and dropped all claims against Jeffrey J. Giguere and Anthony DiPaola. See generally Am. Compl., ECF No. 1-3. Their names continue to appear in the caption of this action merely for the sake of continuity.

across forty-three pages and more than 250 paragraphs. The Court has tried its utmost to understand the pleading's jumbled narrative. The recitation that follows accepts as true the Amended Complaint's well-pled facts while according its conclusory assertions and vituperations no weight. See A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013); Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 5 (1st Cir. 2001).

Plaintiff Sheryl Cohen pleads twelve claims under three statutes: the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. L. § 42-112-1 et seq.; the Rhode Island Whistleblowers' Protection Act ("RIWPA"), R.I. Gen. Laws § 28-50-1 et seq.; and the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215 et seq. The claims under each statute are premised on substantially same set of factual allegations. These include that the Defendants: (1) subjected Cohen to discriminatory terms and conditions of employment (Count I); (2) created an unlawful hostile work environment (Counts II, VI-VIII); (3) retaliated against Cohen for making protected complaints about compensation by denying her pay raises (Counts III-V); and (4) unlawfully terminated her employment by forcing her to resign, i.e. constructive discharge (Counts IX-XII).

All of Cohen's claims arise out of her work for Defendant FGX International, Inc. See generally Am. Compl. The company employed

Cohen an executive assistant for nearly a decade. See Am. Compl. ¶ 8. In March 2014, Cohen's supervisors required her to take on the duties of another executive assistant who left the company. Id. ¶¶ 70-72. To cope with the increased workload, Cohen requested that FGX hire a replacement for her colleague or otherwise provide support from a temporary employment agency. Id. ¶ 72. The Defendants opted for the latter measure. Id. ¶¶ 91, 94-95. Cohen nevertheless found that training temporary workers further strained her capacity. Id. ¶¶ 97-99

Four months after FGX expanded Cohen's role, she asked for a merit-based raise. Id. ¶ 122. Her request was denied. Id. Cohen met with the company's general counsel, Jeffrey Giguere, to discuss concerns related to FGX's decision. Id. ¶ 108. She expressed frustration with the refusal of her supervisor, Defendant John Flynn, Jr., to address her rationale for a merit-based raise and her belief that she was entitled to premium pay for overtime hours. Id. ¶¶ 108-111. According to Cohen, Giguere and a human resources executive vice president, Joanne Morelli, independently admitted that she was entitled to overtime pay. Id. ¶¶ 112, 114. Both promised to take corrective action. Id. ¶¶ 112, 114. Around this same time, Cohen made a presentation to FGX's Chief Executive Officer, Anthony DiPaola, in support of her merit-based raise request. Id. ¶¶ 135-36. DiPaola listened to the presentation, thanked Cohen, and indicated he needed time to consider her

request.  Id. ¶¶ 135.

Cohen waited until July 1, 2014 before making a second request for a raise.  Id. ¶ 123.  She made her request directly to DiPaola; it was again denied.  Id. ¶¶ 137-140.  This time, however, she alleges that DiPaola, "threw up his hands, glared at [her], and yelled loudly . . . 'I am not giving you more money.  Go find another job.'"  Id. ¶ 140.  Fearing what she described as "more intense retaliatory anger or rage," id. ¶ 158, Cohen responded by writing a note that she hand-delivered to Morelli that same day. Id. ¶¶ 177, 185; Defs.' Mem. of Law In Support of Mot. to Dismiss Am. Compl., Ex. A, ECF No. 6-3 ("7/1/2014 Letter").[2]  The note, which Cohen addressed to Flynn and DiPaola, stated:

> I would like to inform you that I am resigning from my position as Executive Assistant, effective July 15, 2014.
>
> Thank you for the opportunities that you have provided me during the last 9 years. I have enjoyed working for FGX & appreciate the support provided me during my tenure with the company.

7/1/2014 Letter at 1.  Morelli took the note and said, "I understand.  If they make you feel uncomfortable let me know."  Id. at

---

[2] No party has challenged the authenticity of the July 1, 2014 note attached to the Defendants' opposition memorandum.  The note is central to Cohen's claim and is referred to in the Amended Complaint.  Accordingly, although the document was not attached to the pleadings, the Court may consider its contents.  See Schaefer v. Indymac Mortg. Servs., 731 F.3d 98, 100 n.1 (1st Cir. 2013).

¶ 186. "I will look into this," she added. Id. Cohen alleges that, despite her missive's language, her exchange with Morelli "made clear . . . that [she] needed [Morelli] to help save her job," and that she "really did not want to leave FGX." Id. ¶ 185.

Cohen claims colleagues largely stopped communicating with her after her interaction with Morelli. Id. ¶ 196. For example, she perceived that employees ceased greeting her as they passed her desk, which she found "very insulting and very cruel . . . ." Id. ¶¶ 194, 198. Similarly, in contrast with prior years, she was largely ignored on her birthday. Id. ¶¶ 204-207. Cohen concludes from the uniformity of her colleagues' behavior that Defendants in fact ordered employees to ostracize her. Id. ¶ 198. She tolerated this atmosphere for eight days before she alleges it started taking a physical toll; she left at mid-day on July 8, 2014. Id. ¶¶ 212, 215. She characterizes her departure as a constructive discharge. See, e.g., id. ¶ 215.

Years later, on July 10, 2017, Cohen filed the first iteration of this action in the Rhode Island Superior Court. Compl. ¶ 17, ECF No. 1-1. The Complaint brought claims under RICRA and RIWPA Id. The Superior Court conditionally dismissed the action on the grounds that (1) the Complaint "contain[ed] no factual assertions that stat[ed] a claim"; and (2) Cohen failed to serve two of the named defendants, but nevertheless granted Cohen leave to amend. Order, Cohen v. FGX Int'l, Inc., Civil Action No. PC-2017-3209

(R.I. Super. Ct. June 22, 2018).  Cohen re-filed, adding a claim under FLSA.  Defendants seized this opportunity to remove the action to this Court and again moved to dismiss.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A two-step analysis governs such a determination.  First, the Court must "distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013) (quotation marks omitted)).  Second, the Court must "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable . . . ."  Id.

## III. Discussion

Defendants press many grounds for dismissal.  The Court, however, need only address three: (1) whether any of Cohen's claims are barred by the applicable statutes of limitations; (2) whether Cohen's FLSA claim relates back to her filing of her July 2017 pleadings; and (3) whether Cohen plausibly state claims under RICRA

and RIWPA.  See Defs.' Mot. 3.

   A.   Application of the Statutes of Limitation

       i.   Cohen's RICRA Hostile Work Environment and
            Whistleblower Claims Are Timely.

The Court finds that Cohen's allegations of a hostile work environment and retaliation in violation of RICRA and RIWPA are timely, albeit barely.[3]  Claims under these statutes must be brought within three years of "the occurrence of the alleged violation." R.I. Gen. Laws §§ 28-50-4(a), 42-112-2 (2018).  The salient question is when the statutory clock began ticking.

Defendants argue that the three-year limitations period for these claims began when she handed her note to Morelli on July 1, 2014.  It follows that Cohen would have had to file her action no later than July 3, 2017 – seven days before she filed her first complaint.[4]  Cohen argues that the limitations period did not begin to accrue until her last day of work – July 8, 2014 – because the circumstances surrounding her July 1 note show it was not an actual

_____

[3]   The Court's separate analysis of Cohen's generalized RICRA claim for discriminatory terms of employment is below.

[4] July 1, 2017 was a Saturday.  Thus, Cohen would have been afforded an extension until at least the next business day under Defendants' theory.  See R.I. Super. Ct. R. Civ. P. 6(a) ("The last day of the period is to be included, unless it is a Saturday, Sunday, or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday, nor a holiday.").

resignation. Her July 10, 2017 filing was therefore timely.[5]

Cohen's proposed computation is supported by both the law and well-pled facts in the Amended Complaint, which the Court is bound to accept as true, however peculiar they may be. The Defendants are correct that that accrual of the limitations period in cases of constructive discharge typically begins when the employee notifies her employer of her resignation. See Green v. Brennan, 136 S. Ct. 1769, 1782 (2016).[6] Once given, the employee has no inherent right to rescind her notice. See, e.g., Ferreira v. Child & Family Servs. of R.I., No. NC-2017-0333, 2018 WL 3085185 (R.I. Super. Ct. 2018); Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs, 810 F.3d 940, 946 (5th Cir. 2015). A letter of resignation must nevertheless be accepted or relied upon to have any effect. See Mendez-Martinez v. Caribbean All. Ins. Co., 851 F. Supp. 2d 336, 344 (D.P.R. 2012) (finding employer was free to reject an attempt to rescind resignation notice employer had already accepted); NRG Energy, Inc. v. Fuchs, CASE NO. 10-CV-989-H (WVG), 2011 WL 13122265, *4 (S.D. Cal. Sept. 27, 2011) ("It is well-settled that a resignation cannot be revoked once accepted or relied upon, regardless of the stated later effective date of the resignation."

---

[5] Again, Cohen was able to benefit from R.I. Super. Ct. R. Civ. P. 6(a).

[6] The Rhode Island Supreme Court has not indicated whether it would follow Green, but it is unnecessary to reach that issue.

8

(emphasis added)).[7]

Here, Cohen's Amended Complaint alleges her exchange with Morelli belied the plain language of her July 1 note. What she wanted was to keep her job at FGX, which she "made clear" when tendering her note. Morelli's response – "I understand. If they make you feel uncomfortable let me know," and her added comment, "I will look into this," Am. Compl. ¶ 187 – plausibly suggests that she understood what Cohen was attempting to convey. See Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000) (holding that "[i]n the Rule 12(b)(6) milieu" the Court must "indulge every reasonable inference in [plaintiff's favor"). The pleadings contain no facts suggesting that her note, though received, was otherwise accepted or relied upon as a resignation by FGX.[8] See Mendez-Martinez , 851 F. Supp. 2d at344(finding no adverse employment action where an employee attempted to rescind his voluntarily tendered resignation letter, which the employer had already accepted); Davis v. Marion Cty. Eng'r, 573 N.E.2d 51,

---

[7] An employee's attempt to rescind a resignation frequently arises in the public sector employment context, but the underlying legal principle – manifesting the acceptance of an offer of contract – is equally applicable here. See Ulrich v. City & Cty. of S.F., 308 F.3d 968, 975 (9th Cir. 2002) (describing employee's right to rescind resignation under California law as a "contractual offer")

[8] The note contains a handwritten remark that it was "Received July 1, 2014." 7/1/2014 Note at 1. The document itself, however, does not reveal when that notation was added or by whom or what, if anything, it may mean.

54 (Ohio 1991) ("[W]e hold that a public employee may rescind or withdraw a tender of resignation at any time prior to its effective date, so long as the public employer has not formally accepted such tender of resignation."). Accordingly, Cohen made a timely filing of her first complaint on July 10, 2017.

> ii. Cohen's Separate Claim of "Continuing Violations" of RICRA Based on Discriminatory Terms of Employment Is Untimely

Cohen's claim in Count I that she suffered from other discriminatory terms of employment in violation of RICRA stands on different footing. Although it is by no means clear, the Court perceives this claim to be based on Cohen's distinct allegations that Flynn "refus[ed] to substantially and fairly increase [her] salary" prior to June 2014 because of her gender. See, e.g., Am. Compl. ¶ 56. Any such conduct occurred well outside the three-year limitations period.[9] Cohen attempts to evade this bullet by pleading her claim as a "continuing violation." Here, however, the continuing violation concept cannot stay time's scythe.

The alleged acts of discrimination (gender-based disparate treatment) within the scope of Count I were independently actionable. They were different in kind than the acts of alleged

---

[9] See Almond v. Unified Sch. Dist. No. 501, 665 F.3d 1174, 1177 (10th Cir. 2011) (Gorsuch, J.) (limitations period begins to run at the time of "the discriminatory acts") (quoting Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980)).

intimidation, ridicule, or insult that form the basis for Cohen's alleged hostile work environment or retaliation claims. Accordingly, the claim cannot be swept within the safety of limitations period. See Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015) (holding continuing violation doctrine "does not apply to 'discrete acts' of alleged discrimination" but rather "claims . . . that by their very nature require repeated conduct to establish an actionable claim, such as hostile work environment claims."); see also Russell v. Enterprise Rent-A-Car Co. of R.I., 160 F. Supp. 2d 239, 260-62 (D.R.I. 2001) (declining to apply continuing-violation doctrine where "[t]he only timely act to anchor plaintiff's claim [was] her termination" which was "unrelated to the earlier alleged acts of sexual harassment").

### iii. The "Relation Back" Rule Does Not Save Cohen's FLSA Claim

Cohen's FLSA claim is also doomed by the statute of limitations. As with RICRA and RIWPA claims, FLSA claims alleging willful violations are also subject to a three-year limitations period. See 29 U.S.C. § 255(a). But Cohen did not make a FLSA claim until July 5, 2018 – four years after she left FGX. Accordingly, her FLSA claim can only survive if it relates back to the date of her original pleadings. It does not.

Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure instructs, "an amendment to a pleading relates back to the date of

the original pleading when . . . the amendment asserts a claim .

. . . that arose out of the conduct, transaction, or occurrence set

out – or attempted to be set out – in the original pleading."[10]  A

party cannot assert a new claim that would otherwise be untimely

if the new claim "[is] supported by facts that differ in both time

and type from those the original pleading set forth."  Mayle v.

Felix, 545 U.S. 644, 650 (2005).   "The underlying question is

whether the original complaint adequately notified the defendants

of the basis for liability the plaintiffs would later advance in

the amended complaint." Meijer, Inc. v. Biovail Corp., 533 F.3d

857, 866 (D.C. Cir. 2008).  Thus, the critical issue is "whether

the original complaint gave the defendant fair notice of the newly

alleged claims." Christopher v. United States, 146 F.Supp.2d 146,

151 (D.R.I. 2001) (quoting Fama v. Comm'r of Corr. Servs., 235

F.3d 804, 815 (2nd Cir. 2000)); see also 6A Charles Alan Wright,

Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Procedure § 1497

---

[10] No party has argued, or even suggested, that R.I. Super.
Ct. R. Civ. P. 15(c), or the Rhode Island law of "relation back,"
applies here.  As this is a federal cause of action being pursued
in federal court exercising federal question jurisdiction, the
Court is not compelled to consider whether the application of Fed.
R. Civ. P. 15(c) rule would defeat state substantive rights. See,
e.g., One Beacon Ins. Co. v. Electrolux, 223 F.R.D. 21, 25 (D.
Mass. 2004) ("[I]n federal question cases wherein federal law sup-
plies the relevant statute of limitations, [federal] Rule 15(c)(3)
applies"); Burgos Martinez v. Rivera Ortiz, 715 F. Supp. 419, 422
(D.P.R. 1989) (citing Marshall v. Mulrenin, 508 F.2d 39, 44 (1st
Cir. 1974)).  In any event, as further explained herein, Cohen's
FLSA claim fails on multiple fronts.

("[I]f the alteration of the original pleading is so substantial that it cannot be said that defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim ... then the amendment will not relate back").

Cohen's July 2017 pleadings contained no hint that she might claim unpaid overtime. Fairness would require Cohen to have pled at least <u>some</u> suggestion she worked more than a forty-hour workweek without being lawfully compensated. <u>See</u> <u>Manning v. Bos. Med. Ctr. Corp.</u>, 725 F.3d 34, 43–44 (1st Cir. 2013) ("[A] claim for unpaid overtime wages must demonstrate that the plaintiffs were employed 'for a workweek longer than forty hours' and that any hours worked in excess of forty per week were not compensated 'at a rate not less than one and one-half times the regular rate.'") (quoting 29 U.S.C. § 207(a)(1)). Cohen's first complaint does refer to "compensation," but only in the limited context of Defendants' denial of a merit-based raise. <u>See, e.g.</u>, Compl. ¶ 17 ("Defendants substantially increased [Cohen's] workload in a discriminatory and demeaning manner refusing to increase her pay because of her sex and gender and prior sex and gender complaints."), ¶ 24 (referring to Defendants' "gender-based underpayment"). The concept of overtime, allegations about hours worked or her alleged non-exempt status are nonexistent.

Cohen argues that her demand for "unpaid earned compensation," as framed by her other allegations, provided the required

notice. The phrase "unpaid earned compensation" appears <u>once</u> in paragraph 28 of her original complaint in a boilerplate request for damages. <u>See</u> Compl. ¶ 28.[11] Context only sharpens the meaning of this phrase: the only "earned compensation" that is the subject of her complaint is the merit-based raise Cohen alleges FGX denied. Other courts have rejected "relation back" theories under much more favorable circumstances. <u>See</u> <u>Bilal-Edwards v. United Planning Org.</u>, 15 F. Supp. 3d 1, 5 (D.D.C. 2013) (finding allegation that employer "falsely stated that [the] [p]laintiff would not receive overtime for the extraordinarily time consuming work project" did not provide fair notice that "intended to challenge whether his position was classified as exempt or non-exempt under the FLSA"); <u>Michaelgreaves v. Gap, Inc.</u>, No. CIV.A. 11-6283 SDW, 2013 WL 257127, at *5 (D.N.J. Jan. 23, 2013) (holding even "[a] general complaint regarding hours in the original pleading is not sufficient to allow the amended pleading to relate back."). The alleged unpaid compensation was totally untethered to the concept of overtime. Thus, Cohen's initial allegations did not provide Defendants with fair notice of a potential FLSA cause of action.

---

[11] Paragraph 28 states, in part, that Defendants' conduct "caused Plaintiff to suffer substantial pecuniary damages, including <u>unpaid earned compensation</u> and other lost wages, raises, fringe benefits, as well as other pecuniary damages." Compl. ¶ 28 (emphasis added).

Cohen's FLSA claim would fail on independent grounds even if it related back to July 10, 2017. A cause of action for unpaid overtime pay accrues when the required compensation is due and payable, i.e. on each payday the employee is entitled to overtime pay. See 29 C.F.R. § 790.21; Dunlop v. State of R.I., 398 F. Supp. 1269, 1286 (D.R.I. 1975) ("A separate cause of action for overtime compensation 'accrues' at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed."); see also Mid-Continent Petroleum Corp. v. Keen, 157 F.2d 310 (8th Cir. 1946). FGX paid Cohen weekly. Am. Compl. ¶ 56. Accordingly, the last possible date that Cohen's overtime claim could have arisen was the last pay day for a week during which she worked more than forty hours. Because her last week of work consisted of just one and one-half days, id. ¶ 211, the latest her FLSA claim could have accrued was the end of the prior week - July 4, 2017 - rendering even her July 10, 2017 filing untimely. For all these reasons, Cohen's FLSA claim does not relate back and must be dismissed as time-barred.

B.    Cohen's Amended Complaint Fails to State a Claim Under RICRA

To state a gender-based hostile work environment claim under RICRA, a plaintiff must allege, among other things, that the complained-of harassment was so severe and pervasive that it altered

15

the conditions of the plaintiff's employment and created an abusive work environment. See *DeCamp v. Dollar Tree Stores, Inc.*, 875 A.2d 13, 22–23 (R.I. 2005). The alleged harassment must be both subjectively and objectively offensive considered against the constellation of surrounding circumstances. *Id.* at 24. Offensive utterances such as "simple teasing" and "offhand comments" or otherwise "isolated incidents" do not create a hostile work environment. See *Kosereis v. Rhode Island*, 331 F.3d 207, 216 (1st Cir. 2003) (citations and quotations omitted).

Cohen's Amended Complaint fails to allege facts demonstrating "severe and pervasive conduct" that altered the conditions of her employment. Her principal complaint is that she was required to perform the work of two executive assistants without an increase in pay. Am. Compl. ¶ 77. There are no facts suggesting that Defendants' denial of her first request for a raise was accompanied by any objectionable conduct. See *id.* ¶ 122. As for the denial of her second request, she alleges that on one occasion DiPaola "yelled loudly" that he would not pay her any more money while glaring at her and gesticulating. *Id.* ¶ 140. This singular exchange was not enough, in and of itself, to comprise hostile-work-environment harassment. See *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'").

Other facts scattered throughout the Amended Complaint similarly fail to plausibly suggest the existence of a hostile work environment. One of Cohen's most precise allegations asserts that Flynn said more than once that he liked to have "young female 'eye candy' in his workplace." Am. Compl. ¶ 24. This statement is objectively offensive, but Cohen fails to allege when or how often Flynn uttered this ribaldry, except that it occurred "repeatedly" sometime before 2014. There is no magic number of incidents that gives rise to an abusive workplace environment, but without additional facts, a reasonable fact finder could not discern whether Flynn's alleged conduct was pervasive or diffuse. Marrero v. Goya of P.R., Inc., 304 F.3d 7, 18 (1st Cir. 2002) ("[H]ostile work environment claims do not 'turn on single acts but on an aggregation of hostile acts extending over a period of time.'" (quoting Havercombe v. Dep't of Educ., 250 F.3d 1, 6 (1st Cir. 2001)); Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 16 (1st Cir. 1999) ("[A] plaintiff must show 'more than a few isolated incidents of [discriminatory] enmity'" to claim a hostile work environment) (quoting Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986)).

Another allegation relates to Cohen's duties "facilitate[ing] catering arrangements" and "initiat[ing] conference calls" for meetings of male executives. Am. Compl. ¶ 45. The Court appreciates that such tasks could, under certain circumstances, fairly be perceived as casual sexism and could contribute to the creation

17

of a hostile work environment.[12]   Here, however, there are simply
no facts that suggest these responsibilities were anything other
than regular duties attendant to Cohen's role as a full-time ex-
ecutive assistant.

The only other category of alleged offensive activity was
Cohen's perception that her colleagues were ignoring her after
July 1, 2014.[13]   See Am. Compl. ¶ 194, 198, 204-207. If this
intentional social isolation occurred, it was undoubtedly uncom-
fortable for Cohen; "discomfort," however, "is not the test."
Ponte v. Steelcase Inc., 741 F.3d 310, 320 (1st Cir. 2014); Patton
v. Indianapolis Pub. Sch. Bd., 276 F.3d 334, 339 (7th Cir.2002)
(Title VII "does not guarantee a utopian workplace, or even a
pleasant one . . . ."). In sum, Cohen's well-pled allegations -

---

[12] Cohen's additional allegations that male executives would
use crude language or make demeaning, gender-based comments in
such meetings suffer from a reliance on characterizations rather
than specific facts – a weakness that pervades her pleadings.  See
Am. Compl. ¶¶ 46-47. Thus, as contained in the Amended Complaint,
these allegations are not well-pled facts credited by the Court.
Dewey v. Univ. of N.H., 694 F.2d 1, 3 (1st Cir. 1982) ("We require
more than conclusions or subjective characterizations.")

[13] Cohen's allegation that Defendants' "ordered" her col-
leagues to retaliate through silence is complete speculation. Such
a conclusion cannot be reasonably inferred from any facts in the
Amended Complaint and it is not credited by the Court.  Araujo v.
UGL Unicco-Unicco Operations, 53 F.Supp.3d 371, 383 (D. Mass. 2014)
("[A]llegations that are too 'conclusory to remove the possibility
of relief from the realm of mere conjecture' are insufficient to
withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."
(quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st
Cir. 2012)).

even if true and considered as a whole - are simply too episodic or benign to plausibly suggest that FGX's work environment was "permeated with the discriminatory intimidation, ridicule, and insult. . . ." Hajian-Bahmany v. Women & Infants Hosp. of R.I., No. CA 10-120 M, 2011 WL 3424642, at *7 (D.R.I. Aug. 4, 2011) (holding that an employee of middle eastern national origin did not show hostile work environment even though she alleged her colleague told her to shut up in her native language and placed a "dictator" sign on her desk).

Having failed to plead conduct that could constitute hostile work environment harassment, Cohen's constructive discharge (or retaliatory termination) theory must also fail. To state such a claim, a plaintiff must allege facts from which a jury could find that "the working conditions [were] so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign," Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000), and that "staying on the job while seeking redress [would have been] intolerable." Keeler v. Putnam Fid. Trust Co., 238 F.3d 5, 10 (1st Cir. 2001). Constructive discharge claims thus typically arise from behavior that is more extreme than the conduct that created the alleged hostile environment. See Marrero, 304 F.3d at 28 ("[T]he fact that the plaintiff endured a hostile work environment — without more — will not always support a finding of constructive discharge.") (citing

Benningfield v. City of Hous., 157 F.3d 369, 378 (5th Cir. 1998)
("[A] constructive discharge claim requires a *greater* severity or
pervasiveness of harassment than the minimum required to prove a
hostile work environment." (quotation marks and citations omitted)
(emphasis added)); Foley v. Proctor & Gamble Distrib. Co., No.
Civ. A. 01-11314-RWZ, 2003 WL 21696544, *3 (July 21, 2003) ("Proof
of a hostile work environment is also a prerequisite to prove
constructive discharge by retaliation.")

Here, there is no additional severe or pervasive behavior
from which a reasonable fact finder could conclude that the at-
mosphere at FGX was unbearable. Suarez, 229 F.3d at 55 (affirming
summary judgment where complaints employer increased employee's
workload and acted to marginalize employee were injuries "to an
employee's ego or prestige" that do "not furnish a legally cog-
nizable reason to treat a resignation as a constructive dis-
charge"); see also Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360
(2d Cir. 1993) (stating constructive discharge cannot be based on
employee's "dissatisf[action] with the nature of his assignments"
or "difficult or unpleasant" conditions). Cohen has therefore
failed to plead facts that could support a claim based on con-
structive discharge or retaliatory termination.

C.  Cohen's Amended Complaint Fails to State a Claim Under RIWPA

RIWPA provides a cause of action for employees who are discharged for reporting an employer's violation of state or federal law. See, e.g., Picard v. State of R.I., 694 A.2d 754 (R.I. 1997). The statute expressly provides that "[a]n employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment" in response to such a report. R.I. Gen. Laws § 28-50-3. The statute protects reports to government actors as well as reports to an employee's employer or supervisor. Maturi v. McLaughlin Research Group, 326 F.Supp.2d 313, 321 (D.R.I. 2004). To state a RIWPA claim, Cohen must allege that "(1) she engaged in protected whistleblowing conduct . . . ; (2) she suffered an adverse employment action contemporaneously or thereafter; and (3)that the adverse action was causally related to the protected conduct." Chagnon v. Lifespan Corp., No. CV 15-493S, 2017 WL 3278952, at *6 (D.R.I. June 19, 2017), adopted by No. CV 15-493 S, 2017 WL 3278858 (D.R.I. Aug. 1, 2017).

The Court concludes that although Cohen adequately plead whistleblowing conduct (her overtime-related complaints to Flynn, Giguere, and Morelli), she failed to allege adverse employment action. No party has identified any law holding that an employee who resigns has been "discharged" or "otherwise discriminated

against" for the purpose of RIWPA. The Court has found no clear answer in the limited body of relevant law interpreting the statute. See, e.g., Pena v. Honeywell Int'l Inc., No. CV 15-179 WES, 2018 WL 582579, at *1 (D.R.I. Jan. 29, 2018) (terminated employee); Rein v. ESS Grp., Inc., 184 A.3d 695, 697 (R.I. 2018) (same); Senra v. Town of Smithfield, 715 F.3d 34, 37 (1st Cir. 2013) (same). Regardless, as explained above, Cohen has failed to plead facts that – if proven – could demonstrate constructive discharge. She has therefore failed to plead an adverse employment action and her RIWPA fails as a matter of law.[14]

III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 10, is GRANTED. Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

_WESmith_

_____
William E. Smith
Chief Judge
Date: June 17, 2019

---

[14] The demise of Cohen's hostile work environment and retaliation claims would provide an independent basis to dismiss her RICRA claims under Count I. See Cordero-Suarez v. Rodriguez, 689 F.3d 77, 83 (1st Cir. 2012) (holding that continuing-violation doctrine did not apply without "some anchoring violation within the limitations period").